UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
07/01/05

_____

In re:

**LARNEY MALCOLM MCGRATH and**                                   Chapter 7 Case
**ANN MARIE-RILEY MCGRATH,**                                      # 04-10606
         Debtors.

_____

**VERMONT FEDERAL CREDIT UNION,**
         Plaintiff,
    v.                                                                                          Adversary Proceeding
                                                                                            # 04-1053
**LARNEY MALCOLM MCGRATH and**
**ANN MARIE-RILEY MCGRATH,**
         Defendants.

_____

*Appearances:*   *Michael D. Johnson, Esq.*         *Anthony R. Duprey, Esq.*
                 *Johnson & Finnigan, LLP*          *Neuse, Smith & Venman, PC*
                 *South Burlington, Vt.*            *Middlebury, Vt.*
                 *For the Plaintiff*                *For the Debtors-Defendants*

### MEMORANDUM OF DECISION
### GRANTING DEBTORS' REQUEST FOR PUNITIVE DAMAGES

      Vermont Federal Credit Union ("VFCU") is a creditor of the Debtors, Larney Malcolm McGrath and Anne Marie-Riley McGrath (the "Debtors") by virtue of a loan VFCU extended to them for the pre-petition refinancing of a truck.[1]  After VFCU mistakenly mailed a clear certificate of title to the Debtors, VFCU swore in an affidavit to the Vermont Department of Motor Vehicles (the "DMV") that it had lost the certificate of title.  VFCU subsequently received a new certificate of title listing VFCU as the lien holder against the subject Truck.  This Court has previously held that VFCU's post-petition actions to obtain a new lien constituted a willful violation of the automatic stay and were void.[2]  The Debtors ask that the Court assess punitive damages against VFCU alleging that VFCU's violation of the stay involved maliciousness and/or bad faith conduct.

### JURISDICTION

      The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(G).

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in this Court's Memorandum of Decision Denying Plaintiff's Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment (doc. # 20).
[2] See Memorandum of Decision (doc. # 20), accompanying Order (doc. # 21) and Order Voiding Post Petition Lien and Directing Correction of DMV Records (doc. # 22).

## PROCEDURAL BACKGROUND

On June 21, 2005, the court held an evidentiary hearing on the issue of whether VFCU acted either with malice or in bad faith when it presented a sworn affidavit that the certificate of title to the Truck was lost, though VFCU had knowledge that it had sent the certificate of title to the Debtors, albeit in error, prior to the Debtors' filing of a bankruptcy petition.[3]  The Debtors withdrew the second issue they had raised, a request for nominal damages due to an alleged cloud on the title, in the joint pretrial statement (see doc. # 26).

## STANDARDS FOR AWARDING PUNITIVE DAMAGES

In the Second Circuit, a court may assess punitive damages against a party who violates the automatic stay when the party knew that by acting without permission from the Bankruptcy Court it was subjecting itself to sanctions.  In re Crysen/Montenay Energy Co., 902 F.2d 1098 (2d Cir. 1990).   In Crysen, the Second Circuit court held that,

> [A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h).

Id. at 1105.

Other courts have outlined a number of factors to be considered in a court's determination of whether the circumstances surrounding the violation of the stay are appropriate for an award of punitive damages.  Some courts consider whether the violating party has demonstrated extreme contempt for the law, is a repeat offender, or has the financial resources to pay the damages.  See In re Wills, 223 B.R. 369, 373 (Bankr. D. Va. 1998).  Other courts consider whether the violating party knew the impact of its actions, so for example, if an agent of the party committed the violation, the courts will award punitive damages only if the circumstances demonstrate the violating party had knowledge of the agent's actions. See In re Joslyn, 75 B.R. 590, 592 (Bankr. D.N.H. 1987) (holding that creditor was not liable for punitive damages when its agent repossessed debtor's vehicle while he had bankruptcy documents in his hands, because the creditor did not know agent acted in this manner); compare, In re McCormack, 203 B.R. 521, 522 (Bankr. D.N.H.1996) (holding creditor was liable for punitive damages notwithstanding the fact that its computer program had posted unauthorized post-petition charges to the debtor's account because it was within the creditor's power to change manually the automatic inaccurate computer entry.).

## DISCUSSION

At the hearing, the Parties presented arguments on specific and fraudulent intent; however the Court finds these arguments to be inapposite.  The controlling standard is that articulated in Crysen,

---

[3] The salient facts are contained in the Court's previous decision; and in the interest of brevity they will not be recited here (see doc. # 20).

2

namely, whether the creditor acted maliciously or in bad faith. See Crysen, 902 F.2d at 1104. This Court has held previously that VFCU's attempt to improve its position by seeking a new certificate of title with its lien on it constituted a willful violation of the stay.[4] In order for the Court to award punitive damages, the Debtors must show that in requesting the duplicate certificate of title VFCU acted maliciously or in bad faith. The Court finds that the Debtors have sustained their burden of proof and an award of punitive damages is warranted. The Court relies on five distinct aspects of VFCU's conduct in reaching its conclusion that VFCU acted in bad faith.

First, the Court finds it was bad faith for VFCU to seek a duplicate certificate of title naming VFCU as the lien holder on the truck at a time when (1) VFCU had knowledge that VFCU had actually released its lien on the Debtors' truck, (2) it knew that the Debtors had listed the VFCU claim as unsecured in their bankruptcy case, and (3) VFCU was negotiating a reaffirmation of its debt. VFCU's collection officer testified that he had read the Debtors' schedules on PACER, saw that the VFCU claim was listed as unsecured, and nonetheless sought a replacement title showing VFCU to be a valid lien holder. The Court finds such conduct constitutes an egregious attempt to improve the status of their claim post-petition.

Second, the Court finds that VFCU compounded its bad faith by filing a false affidavit. The Debtors have shown that VFCU did not take reasonable steps to ensure compliance with the strict requirements of veracity essential to an affidavit. At the hearing, the collection officer testified that it was his practice to file an affidavit of lost title whenever a certificate of title on which VFCU claims a lien is not in the member / borrower's VFCU file; that he has done this many times. This is especially troubling here where even though the collection officer previously filed an adversary proceeding in which he admitted that VFCU had mistakenly sent the title to the Debtors, he testified that as far as he was concerned the original title to the Truck remained lost simply because it was not in his file. This is not the dictionary definition of "lost," and the Court is persuaded that this is not the definition of "lost" DMV intended. The Court finds the affidavit was false. VFCU's tacit acceptance of its collection officer's definition, its tacit approval of the affidavit, and its tacit endorsement of the collection officer's practice to request a duplicate title in such circumstances without asking any questions of either his supervisor or the member, constitutes a reckless disregard for the penalty of perjury provisions on an affidavit and the rights of VFCU's members who have filed for bankruptcy relief. Moreover, by allowing its collection officer to request a duplicate certificate title as a normal procedure, without verification that the certificate of title is actually lost, VFCU is eviscerating the penalty of perjury that accompanies the execution of an affidavit. These two findings support a finding of bad faith and an award of punitive damages.

---

[4] See Memorandum of Decision Denying Plaintiff's Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment (doc # 20).

3

Third, the Court finds the Debtors have shown that the practices and procedures of VFCU lack the requisite due care a creditor must exercise when it seeks to collect debts owed by members who have filed for bankruptcy relief, further supporting a finding of bad faith. The collection officer testified he had twenty-five (25) years of experience dealing with bankruptcy issues. As a credit facility, VFCU is held to a high standard of knowledge and has a duty to regulate its procedures, and instruct its employees, to comply with the bankruptcy code mandates. See In re McCormack, 203 B.R. at 525. Its failure to do so is demonstrated by the fact that, according to the testimony presented by the collection officer, VFCU allows its collection officers unfettered discretion in obtaining duplicate certificates of title and dealing directly with the affairs of its members who have filed for bankruptcy protection. Here, VFCU permitted its collection officer to file a proof of claim, seek and execute a reaffirmation agreement, and file an adversary proceeding on behalf of VFCU without retention of legal counsel. The lack of internal checks to ensure compliance with bankruptcy law, and the broad discretion VFCU extends to its collection officers in dealing with debts in bankruptcy cases, puts its debtor members at great risk of reckless violations of the stay and is further grounds for the Court's finding of bad faith.

Fourth, the Court finds VFCU's failure to establish policies compelling its employees to recognize the rights of debtors to be yet another indicia of bad faith. The certificate of title is the document that symbolizes the relationship of the Debtors and the VFCU with respect to collateral. VFCU is aware that an alteration in the identity of the lien holder in a certificate of title results in a material change in the rights of the parties. Therefore VFCU was required to ensure that any actions that it took pertaining to a certificate of title were legitimate. However, there is no policy in place to prohibit a collection officer from requesting a duplicate certificate, essentially reinstating a lien in favor of VFCU, without any inquiry, search or supervisory authorization. In sum, VFCU has no procedure in place to prohibit its employees from illegitimately seeking a title in VFCU's name, filing false affidavits or taking steps to reinstate liens in violation of the automatic stay. Other courts have awarded punitive damages where a creditor's failure to act results in a violation of the stay. See In re Timbs (1994, Bk'cy Ct ED Tenn) (awarding punitive damages where creditor consciously failed to take action to stop garnishment of debtor's wages). The Court finds that the collection officer's motives, i.e., whether he intended to harm the Debtors in obtaining the duplicate title is not relevant.

Lastly, the Court finds that the timing of VFCU's request for a duplicate title demonstrates bad faith. The collection officer's inability to recall exactly when he became aware that VFCU had mistakenly sent a clean certificate of title to Debtor is of dubious veracity. The collection officer testified that he forwarded a draft reaffirmation agreement to the Debtors' attorney with a cover letter on May 20, 2004 (Creditor Ex. 1), and completed the affidavit requesting a duplicate title on May 25, 2004 (Debtors' Ex. A). Although the affidavit requesting a duplicate title contains no date (Id.), the duplicate certificate

4

of title reflects May 28, 2004, as the "date titled" (Debtors' Exhibit B), which would mean DMV issued the title three days after the application was prepared. This is hard to believe. The collection officer himself testified that it generally takes thirty (30) to forty-five (45) days to obtain a duplicate title from DMV. In light of his significant experience in requesting duplicate titles, and taking judicial notice of the processing of requests by DMV departments, the Court adopts this as a reasonable and reliable timeframe. Applying this timetable to the fact that we know that DMV issued a duplicate certificate of title on May 28th, the Court finds that the collection officer must have made his request on a date much earlier than May 25th. The collection officer's answers to questions posed to him at the evidentiary hearing were generally evasive, and were not credible with regard to when he actually discovered that VFCU had released the title to the Debtors and when he applied for the duplicate title. The Court finds it more likely than not that VFCU had knowledge that its security interest was unperfected on the date it forwarded the draft reaffirmation agreement on May 20, 2005, and prepared and mailed the application for a new title on or before May 20th.

Although there are cases which hold that a creditor is not liable for its agent's actions if the creditor did not know of the agent's violation of the stay or repudiated the agent's actions once they learned of them, the record reflects no such lack of knowledge by VFCU here. See In re Joslyn, 75 B.R. at 592 (creditor not liable for punitive damages because it was not aware of employee's willful violation of stay); compare In re McCormack, 203 B.R. at 522 (creditor liable for punitive damages because violation of stay demonstrates a corporate entity acting through many employees and agents in reaching a "corporate conscious" decision and actions suggest conscious company wide practice). VFCU never sought to dismiss the adversary proceeding, to notify the Court that the collection officer was not authorized to file the adversary proceeding on its behalf or to withdraw the application for a new certificate of title. This leads the Court to conclude that VFCU lacked policies and procedures to avoid violations of the stay or did not find the collection officer's conduct inappropriate. Consequently, the Court finds that the conduct of the collection officer is properly attributed to VFCU under these facts, and demonstrates that VFCU acted with reckless disregard for the Bankruptcy Code and the rights afforded to debtors under the Bankruptcy Code. The Court finds no mitigating circumstances that warrant denying an award of damages against VFCU.

In ascertaining the proper amount of damages to award, the Court looks to the totality of the circumstances and all of the facts established. Several jurisdictions hold that the amount "of damages to be awarded should be measured by the gravity of circumstances attendant to violation." In re Fugazy Express, 114 B.R. 865, 875 (Bankr. D.N.Y. 1990). The violator's level of sophistication and familiarity with the automatic stay gives a court grounds to award fees that are sufficiently high enough to be "painful" to the violator. The motive of the violator and the relationship between the parties is another

5

potentially important factor. See e.g. In re Aponte, 82 B.R. 738, 745-46 (Bankr. D. Pa., 1988). Other courts focus on "the nature of creditor's conduct, the nature and extent of harm to the debtor, creditor's ability to pay damages, and any provocation by the debtor," in making a fact based inquiry regarding the amount of punitive damages. In re Shade, 261 B.R. 213, 216 (Bankr. D. Ill. 2001).

The Debtors request punitive damages in the amount of $5,000. The Court finds VFCU was sophisticated enough to understand the implications of its actions in violating the stay, a fact affirmed by the collection officer who testified to twenty-five years of collection experience involving bankruptcy cases. In addition, the Court gives significant weight to VFCU's motive in filing for a duplicate title, namely to become secured and improve its priority in relation to other creditors. This is contrary to the bedrock rationale of bankruptcy. On the other hand, the Court also recognizes that there was no harm to the Debtors, beyond the attorney's fees they incurred, because the Court voided the acts of VFCU to obtain a new title and reinstate its lien. After due consideration of all the circumstances of this case, the Court finds one and a half the amount of attorney's fees already awarded to the Debtors, or $1,800 to be a reasonable punitive sanction. The Court makes this determination based upon the premise that this sum will be sufficient to deter VFCU from similar practices in the future and to emphasize the importance of instituting internal policies and procedures that ensure the legal rights of any members who seek bankruptcy relief will be protected.

## CONCLUSION

For the foregoing reasons, the Court finds VFCU's violation of the stay was committed by actions undertaken in bad faith, that there are no mitigating circumstances to offset such bad conduct, that a punitive sanction is appropriate to deter future conduct of this type and that $1,800 is an appropriate sanction under all the facts and circumstances of this case. Therefore, the Court grants the Debtor's request for punitive damages under 11 U.S.C. § 362(h) and directs VFCU to pay this sum to the Debtors within twenty (20) days of this order.

This constitutes the Court's findings of fact and conclusions of law.

July 1, 2005      Colleen A. Brown
Burlington, Vermont      United States Bankruptcy Judge